FRANCIS WHITE, Executor and Devisee of MILES WHITE *vs.* ELIZA A. McCLELLAN, *et al.*, use of WILLIAM W. McCLELLAN.

*Bill to redeem Mortgage—Foreclosure proceedings under the Act of 1836, ch. 249, relating to Mortgages in the City of Baltimore—Misnomer of the Mortgagee in the Advertisement of sale of the Mortgaged premises.*

This Court has nothing to do with the policy or expediency of the Act of 1836, ch. 249, relating to mortgages in the City of Baltimore; and however anomalous and extraordinary some of its provisions may be, yet if they have been *fairly and substantially* complied with, the rights of *bona fide* purchasers under it must be protected.

The Act of 1836, ch. 249, in defining the requirements of the notice of sale to be given by the mortgagee provides, "that every such notice shall specify the name of the mortgagor, and of the mortgagee, and the last assignee of the mortgage, if any; the date of the mortgage; the amount claimed to be due thereon," &c. A mortgage containing the power of sale authorized by this Act was foreclosed by the mortgagee. Prior to the notice of foreclosure the mortgage had been assigned by the mortgagee as collateral security for a debt, which debt was paid before the notice was published. HELD:

1st. That the debt, to secure which the assignment was made, having been paid, the assignee had no interest in the mortgage at the time of the publication of the notice of sale.

2nd. That the mortgagee being, in fact, the owner of the mortgage debt, was the proper person to execute the power of sale upon the failure of the mortgagor to pay the debt at the time prescribed in the mortgage.

3rd. That he being the original mortgagee, it was unnecessary in the notice of sale to set forth the assignment by him of the mortgage and its re-assignment to himself.

4th. That being the mortgagee, and as such entitled to the proceeds, the mere failure to set forth the assignment by him, could not

under such circumstances prejudice in any manner the interests of the mortgagor.

The name of the mortgagee was J. C. W. The notice of sale specified J. W. as the mortgagee. The date of the mortgage, the name of the mortgagor, and the description of the mortgaged premises, were correctly given, and the name of J. C. W. was signed at the bottom of the notice of sale. HELD:

That in the absence of any pretension that the J. W. named in the body of the notice as mortgagee, and J. C. W. whose name was signed at the bottom, were in fact different persons, the mere omission of the initial letter from the name, was no ground to justify a Court in setting aside the sale.

The amount stated in the notice as that claimed to be due on the mortgage, was $4,345.22, it. turned out that the sum actually due was $200 less. HELD:

That all the law required was that the mortgagee should state in his notice the amount claimed to be due him. And if this was done in good faith, the mere fact that there was an error in the amount thus claimed, was not such a mistake as would render the sale void.

The Act of 1836, ch. 249, provides that "in order to entitle any person to foreclose a mortgage according to the provisions of this Act, notice that the same will be foreclosed by a sale of the mortgaged premises shall be given by publishing the same," &c. The notice of sale was as follows: "MORTGAGE SALE. By virtue and in pursuance of a mortgage made and delivered by H. C. McC. to J. W., bearing date the eighth day of December, eighteen hundred and forty-seven, the undersigned will sell," &c. HELD:

That the notice sufficiently indicated that the mortgage was to be foreclosed by a sale of the mortgaged premises.

APPEAL from the Superior Court of Baltimore City, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, and IRVING, J.

*William F. Frick,* for the appellant.

*Arthur W. Machen,* for the appellees.

ROBINSON, J., delivered the opinion of the Court.

On the 8th of December, 1847, Henry C. McClellan executed a mortgage to Joseph C. Wilson of five parcels of ground in Baltimore; and agreed, upon default in the payment of the mortgage debt at maturity, that the mortgagee might sell the mortgaged premises in the manner authorized by the Act of 1836, chapter 249, entitled "An Act relating to mortgages in the City of Baltimore."

The mortgage debt not being paid at maturity, Wilson in pursuance of this power, on the 24th May, 1848, sold the mortgaged property at public sale. At this sale, Wilson bought lots No. 1, 2, 3 and 5, and Richard S. Hardesty bought lot No. 4. One of the lots thus purchased, Wilson afterwards sold and conveyed to Miles White.

On the 9th September, 1854, more than six years after the sale, a bill was filed by McClellan claiming the right to redeem the mortgaged premises upon payment of the mortgage debt and interest; and asking that an account be taken of the rents and profits received by Wilson, and those claiming under him.

To this bill, Wilson on the 8th March, 1855, filed an answer under oath, setting up among other things, his title to the property under the sale to foreclose the mortgage.

No further proceedings were taken in the case, until March, 1859, when a *bill of revivor* was filed by the appellees, claiming to be heirs-at-law of Henry C. McClellan, the mortgagor. A commission was subsequently issued, and testimony taken, and the case was set down for hearing on the 26th November, 1864.

From this date for a period of nearly *twenty years,* no further steps were taken to bring the controversy to an

end.    In the meanwhile, Miles White died, and the appellant his devisee being about to sell one of the lots, discovered that this case was still pending.  Upon his petition, he was made à party to the suit, and on the 9th July, 1883, nearly thirty years after the original bill was filed by McClellan, and thirty-five years after the property was sold under the mortgage, a decree was passed setting aside the sale thus made as *null* and *void.*

In support of this decree it is urged that the Act of 1826, being in derogation of the well established principles of equity, to support a sale under it, there must be the *strictest* compliance with every requirement of the statute.  We have nothing to do of course with the policy or expedience of the Act; and however anomalous and extraordinary some of its provisions may be, yet if they have been *fairly and substantially* complied with, the rights of *bona fide purchasers* under it must be protected. The mortgagor McClellan agreed that upon default in the payment of the mortgage debt, the mortgagee might sell in the manner authorized by the Act of 1836; and this Act provides that every sale made in pursuance of such a power, to a *bona fide* purchaser, "shall be equivalent to a foreclosure and sale under a decree of a Court of equity, so far as to be an entire bar of all claim or equity of redemption of the mortgagor."

What then are the requirements of this Act?  Sections 2 and 3, provide "that in order to entitle any person to foreclose a mortgage according to the provisions of this Act, notice that the same will be foreclosed by a sale of the mortgaged premises, or some part of them, shall be given by publishing the same three times a week for three weeks;" * * * "that every such notice shall specify the name of the mortgagor and of the mortgagee, and the last assignee of the mortgage, if any; the date of the mortgage; the amount claimed to be due thereon," &c.

It is claimed that the foreclosure proceedings now in question failed to comply with the statute in several material particulars.

First, it is said the statute expressly provides that the notice of sale shall specify the name of the mortgagee and of the last assignee, if any—that the mortgage in this case had been assigned by Wilson to Michael Herr, and the notice was defective because it did not state the fact of assignment, and the name of the assignee. Now if Herr was the assignee at the time of the notice of sale, there might be some force in this objection. Being the party beneficially interested, it would have been his duty to have given the notice of sale, and to have performed all other duties required by the Act in making sale of the property. The record however shows, that although the mortgage had been assigned to him, yet at the time of the notice of sale, he had no interest whatever in it. Wilson in his answer to the bill of McClellan, says, it was assigned to Herr as collateral security for money borrowed with the knowledge, and for the accommodation, of McClellan, and that the money was paid to Herr before the notice of foreclosure was published. No proof was offered, it is true, by the appellant in support of the facts set forth in the answer, but the complainant McClellan as part of his proof, has filed certified copies of the assignment to Herr, and his re-assignment to Wilson ; and this latter paper recites that it was executed in consideration of the sum of four thousand dollars, paid to him by Wilson, on or about the sixth of April, 1848. So according to the complainant's own admission, Herr had no interest whatever in the mortgage, at the time of the publication of the notice of sale. On the contrary, Wilson, the mortgagee, was in fact the owner of the mortgage debt, and the proper person to execute the power of sale upon the failure of McClellan, to pay the debt at the time prescribed by the mortgage. And being the original mortgagee, it was un-

necessary in the notice of sale, to set forth the assignment to Herr, and the re-assignment to himself. Being the mortgagee and as such entitled to the proceeds, the mere failure to set forth the assignment to Herr, could not under such circumstances prejudice in any manner the interests of the mortgagor.

Then again the notice of sale is said to be defective, because it specifies *Joseph Wilson* as the mortgagee instead of *Joseph C. Wilson.* This objection is certainly a very technical one. All the essential facts, the date of the mortgage, the name of the mortgagor are set forth correctly; and the mortgaged premises are properly described and the name of *Joseph C. Wilson* is signed at the bottom of the notice of sale. It is not pretended that the Joseph Wilson named in the body of the notice as the mortgagee, and Joseph C. Wilson whose name is signed at the bottom, are in fact different persons, and the mere omission of the middle letter of the name, is no ground to justify a Court in setting aside the sale. In the eye of the law, Joseph Wilson is under such circumstances, Joseph C. Wilson, the mortgagee.

Another objection is the failure to state in the notice the amount claimed to be due on the mortgage. The notice states "*the amount claimed to be due on this mortgage on this first day of May,* 1848, *is* $4,345.22." According to the calculation made by the appellees, the amount due is about $200 less. All the law required was that the mortgagee should state in his notice the amount claimed to be due him. And if this is done in good faith, the mere fact, that there was an error in the amount thus claimed, is not such a mistake as would render the sale void.

The next and last objection which in our opinion it is necessary to notice, is the failure to state in the advertisement of sale, that the mortgage will be foreclosed by a sale of the mortgaged premises. We are unable, we must

confess, to see the force of this objection. The Act provides that in "order to entitle any person to foreclose a mortgage according to the provisions of this Act, notice that the same will be foreclosed by a sale of the mortgaged premises, shall be given by publishing the same," &c.

The notice of sale in this case was as follows:

"MORTGAGE SALE."

"By virtue and in pursuance of a mortgage made and delivered by Henry C. McClellan to Joseph Wilson bearing date the eighth day of December, eighteen hundred and forty-seven, the undersigned will sell, &c."

Then follows a description of the mortgaged premises.

The notice thus plainly states, that the sale was made in pursuance of a certain mortgage executed by McClellan to Wilson, and this mortgage provided that upon default in the payment of the mortgage debt, Wilson might sell the mortgaged premises in the manner authorized by the Act of 1836. If it was a sale under the Act of 1836, it was a sale to foreclose the mortgage, because no other sale is authorized by the statute.

The objections thus relied on and which were pressed with so much earnestness in argument, are not sufficient to justify us in setting aside these sales. Where a mortgagee is authorized by a statute to sell the mortgaged premises, and is not even required to report the sale to a Court of equity for ratification, Courts ought to be careful to see that every *essential* requirement of the statute has been complied with. But if this has been done, the rights of *bona fide* purchasers must be protected, however questionable may be the policy of the law under which the sales are made.

For these reasons the decree below must be reversed, and the bill dismissed.

*Decree reversed, and*
*bill dismissed.*

(Decided 19th June, 1884.)