.John M. Hoffman v. Daniel B. Harrington and another.

*Mortgages: Right of possession at common law.* A mortgage in common-law form, executed prior to the statute which deprived mortgagees of the right of possession, gave the mortgagee or his assigns the right to go into the enjoyment of the lands and hold them until redeemed.

*Mortgages: Right of redemption: Laches.* Where no steps have been taken to redeem such a mortgage for nearly forty years after its maturity, and more than thirty after an open attempt to foreclose, it will require a very strong showing to authorize a bill to redeem.

*Mortgages: Right to redeem: Right of possession.* The right to redeem from such a mortgage, if outstanding, could not affect the right of possession, and could only be asserted by bill.

*Irregular foreclosure: Purchaser: Right of possession.* The purchaser at an irregular foreclosure obtains all the rights of the mortgagee, including, in case the mortgage was made prior to 1843, the right of possession.

*Mortgages: Power of sale: Statutory provisions: Sales.* The statutory provisions for foreclosure are to be treated as a part of every mortgage with a power of sale executed under the statute; and the sale under the power is a distinct exercise of authority under the terms of the contract; and while it may not be effectual to bar redemption unless in. accordance with the statute, it conveys the title of the mortgagee, and that of the mortgagor subject to his redemption right.

*Statutory foreclosures: Officer: Deed: Statute of 1833.* The officer who conducts a statutory foreclosure sale merely stands in the shoes of the mortgagee and represents both parties; and under the statute of 1833 the power of sale continued in force as a personal power, until completed by deed, in the person who acted when the property was struck off, passing in case of his death to his representatives, and not to any official successor; and where the sale was made by the sheriff he might at the proper time lawfully execute the deed, though his term of office had in the meantime expired.

*Heard January 20.     Decided April 5.*

Error to St. Clair Circuit.

*Atkinson Bros.,* for plaintiff in error.

*C. F. Harrington, C. R. Brown* and *B. C. Farrand,* for defendants in error.

CAMPBELL, J:

Hoffman brought ejectment to recover certain lands in St. Clair county, the title to which purported to be derived

under a mortgage foreclosure. The land was patented by the United States in 1835 to one Lucius Beach, who, in 1834, granted it by warranty deed to Jeremiah Harrington, and he in the same year (1834) conveyed it with warranty to John Kennelly. January 13, 1836, Kennelly mortgaged it to Charles Peltier for one hundred and thirty-eight dollars. November 15, 1839, Peltier began a foreclosure by advertisement, and on March 30, 1840, the land was struck off by Harmon Chamberlain, sheriff of St. Clair county, to Caleb O. Halstead, to whom Chamberlain, in 1844, after he had ceased to be sheriff, conveyed it in pursuance of the certificate. Halstead devised the property to Lucy Cain, who conveyed it to Hoffman.

The defendants claim under a deed from Lucius Beach, made in 1866, to Daniel B. Harrington, and recorded before the deed to Jeremiah Harrington; but defendants are found not to be *bona fide* purchasers without notice. The court below gave judgment for defendants, on the ground that plaintiff showed no possessory title.

The important controversy arises out of the foreclosure proceedings.

The mortgage in question, being in form a common-law mortgage, and dated many years before the statute which deprived mortgagees of the right of possession, gave Mr. Peltier or his assigns the right to go into the enjoyment of the lands and hold them until redeemed. After the time for payment had expired Peltier caused a foreclosure to be made and the property was sold to Mr. Halstead, through whom plaintiff claims.

It is not very important in this case whether the mortgage was legally foreclosed or not, except upon the question of the transfer of title. Where no steps have been taken to redeem a mortgage for nearly forty years after its maturity, and more than thirty after an open attempt to foreclose, it would require a very strong showing to authorize a bill to redeem.—*Reynolds v. Green, 10 Mich. R., 355.* And as the right to redeem, if by any chain of circum-

stances it should be found possibly outstanding, cannot affect the right of possession, and can only be asserted by bill, it cannot take away the rights of plaintiff if he has succeeded to Peltier's title, whether legally foreclosed or not.

It was held in *Gilbert v. Cooley, Walker's Ch. R., 494,* that the purchaser at an irregular foreclosure obtains all the rights of the mortgagee. That case has always been followed in this state as a correct interpretation of the law of mortgages. But it is insisted that case merely held it to be an assignment in equity, and is no authority for legal proceedings. It was, however, held in *Dougherty v. Randall, 3 Mich. R., 581,* that the rights of any one entitled to the real ownership of a mortgage, whether transferred to him by deed or otherwise, are possessory and valid to maintain ejectment, under a mortgage made prior to 1843; and that for such a purpose an equitable assignment is sufficient. These cases dispose of the whole controversy. But it is an error to speak of such a purchase as not covering a legal transfer. If there is any thing which it does not cover it is the equitable right of redemption. And while this right has always, under our law, been regarded as practically a legal estate, the right of the mortgagee may be transferred either by a legal or by an equitable assignment or conveyance, and either will suffice.—*Niles v. Ransford, 1 Mich. R., 338.*

The power of sale in the mortgage in question empowered either the mortgagee or such person as was authorized under the statute (which is a part of every mortgage with power of sale executed under it), to make sale and conveyance on default. These powers were introduced originally to save the necessity of an equitable foreclosure, and were designed to cut off the twenty years' equity of redemption. Our statutes have imposed certain conditions before this redemption can be thus absolutely barred. But the sale under the power is a distinct exercise of authority under the terms of the contract; and while it may not be effectual to bar redemption unless in accordance with the statute, it conveys

the title of the mortgagee, and that of the mortgagor subject to his redemption right, according to the form of the mortgage itself. The officer who sells merely stands in the shoes of the mortgagee and represents both parties.

It is claimed, however, that the deed in this case was made by a person not exercising any official powers, because not then sheriff. This objection is rested on a misapprehension of the statute applicable to the case. This mortgage was executed under "an act concerning mortgages," approved April 19, 1833. That act became a part of the contract, so far at least as to make valid any proceedings had in accordance with its provisions. It regarded the power of sale as continuing until completed by deed in the person who acted when the property was struck off, as a personal power, passing in case of his death to his representatives and not to any official successor. It is declared by section twelve that if the property sold is not redeemed "it shall be the duty of the officer or other person who shall have sold the same, or his executors, or administrators, to complete such sale by executing a deed of the premises so sold to the purchaser or purchasers." Whether under this or any subsequent statute, the sheriff's successor, as one of the persons contemplated as a possible actor under the original power, could or could not take it up where his predecessor left it, the language of the statute is entirely clear, that the deed may be lawfully made by the person selling, or his executors, whether in or out of office.

The facts found entitle the plaintiff to judgment, and the judgment for the defendants was erroneous. There seems, however, to be a difficulty without a further finding, in precisely locating some part of the premises. It will be necessary, therefore, to order a new trial.

The judgment below must be reversed, with costs, and a new trial granted.

The other Justices concurred.